B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>*Thomas Adams* | DEFENDANTS<br>*Richard Catrambone, Sr* |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>*Carlton Odim, Odim Law Offices*<br>*225 W. Washington St. #2200*<br>*Chicago IL 60606  (312) 578-9590* | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor  ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☑ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

*Adversary Comp. to Determine Dischargeability under*
*§523 (a)(2), (4) + (6)*

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property – §542 turnover of property
☐ 12-Recovery of money/property – §547 preference
☐ 13-Recovery of money/property – §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☑ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☑ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☑ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ *659,535.37 + interest* |

Other Relief Sought

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>*RICHARD CATRAMBONE, SR* | BANKRUPTCY CASE NO.<br>*11-39311* | |
| DISTRICT IN WHICH CASE IS PENDING<br>*NORTHERN DIST. IL, EASTERN* | DIVISION OFFICE<br>*EASTERN* | NAME OF JUDGE<br>*BLACK* |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>*Curtis Odim* | | |
| DATE<br>*DECEMBER 23, 2011* | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>*CARLTON ODIM* | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| RICHARD J. CATRAMBONE, Sr. | ) | Case No. 11-39311 |
| | ) | |
| | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

_____

| | | |
|---|---|---|
| THOMAS ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No. _____ |
| | ) | |
| RICHARD J. CATRAMBONE, Sr. | ) | |
| | ) | |
| Defendant. | ) | |

### ADVERSARY COMPLAINT OF THOMAS ADAMS TO DETERMINE
### DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523 (a) (2), (4) and (6)

Now comes Thomas Adams (hereinafter the "Plaintiff" or "Adams," by and through his

attorneys, Carlton Odim of Odim Law Offices and Jeffrey Antonelli of the Law Office of Jeffrey J.

Antonelli, Ltd., and petitions the Court, pursuant to 11 U.S.C. § 523 (a) (2), (4), and (6) for the purpose

of determning that the debt owed to Thomas Adams is nondischargeable. In support thereof, Thomas

Adams submits as follows:

1.      This adversary proceeding arises out of Defendant's Chapter 7 Case No. 11-39311, filed

on September 28, 2011.

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157

and 11 U.S.C. § 523. This is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(I).

3.      This adversary proceeding stems from the Plaintiff's civil action against Richard

Catrambone (hereinafter the "Defendant" or "Catrambone") that he brought in the United States District

1

Court for the Northern District of Illinois. A true and correct copy of the Plaintiff's complaint in

the District Court is attached as Adversary Complaint Exhibit A. The complaint in the District Court

alleged a breach of fiduciary duty, tortious interference with economic advantage, and violation of the

Illinois Wage Act.

4.     On March 23, 2007, following a four-day trial, a jury found in favor of Adams and

against Catrambone on his fiduciary duty and loss of prospective economic advantage claims and

further found with respect to both claims that Catrambone's conduct was willful and wanton and that

Adams was entitled to an award of punitive damages.

5.     After a two-day trial on damages on March 30-April 1, 2008, the Plaintiff's complaint

resulted in a judgment in favor of Adams in the amount of $659,535.37 for compensatory and punitive

damages (hereinafter the "Debt"), entered on September 10, 2010. A copy of the judgment is attached

as Adversary Complaint Exhibit B and a copy of the District Court's Memorandum and Order is

attached as Adversary Complaint Exhibit C.

6.     During post-judgment phase of the district court case, the Plaintiff discovered that

Richard Catrambone had fraudulently transferred millions of dollars of real estate in a land trust to his

wife Lorraine Catrambone, and fraudulently transferred assets in order conceal and hide his true

ownership and control of a number of companies nominally held in the names of insiders, including his

wife Lorraine Catrambone. On September 16, 2011, the Plaintiff filed the following pleadings against

Catrambone seeking among other things to cancel the fraudulent transfers, all of which are pending and

unresolved in the District Court: (A) Plaintiff's Motion to Cancel Fraudulent Transfer (Land Trust) (02

C 8700, docket no. 323), (B) Plaintiff's Motion for Preliminary Injunction as to Land Trust (02 C 8700,

docket no 324), (C) Plaintiff's Motion to Cancel Fraudulent Transfer as to Trucking Companies (02 C

8700, docket no 326), and (D) Plaintiff's Motion for Preliminary Injunction as to Trucking Companies

(02 C 8700, docket no 327).

7.     On September 22, 2011 and in relation to Plaintiff's motions for cancellation of

fraudulent transfers, the District Court entered a temporary restraining order against Richard

Catrambone and his wife Lorraine Catrambone and other parties in concert with them (02 C 8700,

docket no. 333). This TRO is attached as Adversary Complaint Exhibit I.

8.      Following the entry of the September 22, 2011 temporary restraining order, Catrambone

filed the Chapter 7 bankruptcy action in which this adversary action is filed.

9.      The Trustee in the has made a no asset finding in the underlying bankruptcy action of

Richard Catrambone and has abandoned any interest in the property described in the fraudulent transfer

motions and preliminary injunction motions described in paragraph 6 of this advesary complaint.

### COUNT ONE

10.     The Plaintiff re-alleges each allegation in paragraphs 1 through 9.

11.     Through the above, the Defendant has engaged in actions amounting to those recognized

as nondischargeable in 11  U.S.C. § 523(a)(2)(A).

### COUNT TWO

12.     The Plaintiff re-alleges each allegation in paragraphs 1 through 9.

13.     Through the above, the Defendant has engaged in actions amounting to those recognized

as nondischargeable in 11  U.S.C. § 523(a)(4).

### COUNT THREE

14.     The Plaintiff re-alleges each allegation in paragraphs 1 through 9.

15.     Through the above, the Defendant has engaged in actions amounting to those recognized

as nondischargeable in 11  U.S.C. § 523(a)(6).

WHEREFORE, Thomas Adams respectfully requests that this Court:

1.      Hold the debt, the $659,535.37 judgment for compensatory and punitive damages

entered on September 10, 2010 by the District Court, nondischargeable pursuant to 11  U.S.C. § 523(a)

(2)(A), (a)(4) and/or (a)(6).,

2.      Enter an order allowing Thomas Adams to proceed in the District Court with his pending

3

motions for the cancellation or fraudulent transfer and any injunctive relief and make a finding

that the United States Trustee has abandoned the property against which those motions for relief are

directed, and

3. Grant any other relief necessary to protect the interests of Thomas Adams.

Respectfully submitted,

/s/ Carlton Odim
Carlton Odim
Odim Law Offices
225 West Washington Street, #2200
Chicago, Illinois 60606
tel: (312) 578-9390
fax: (312) 924-0201
em: carlton@odimlaw.com
Atty ID No: 6182368

Jeffrey Antonelli
Law Offices of Jeffrey Antonelli, Ltd
30 North LaSalle Street, Suite 3400
Chicago, IL 60602
Tel: (312) 201-8310
em: Jeffrey@Antonelli-Law.com

# ADVERSARY COMPLAINT
# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS ADAMS,                          )
                                       )
                Plaintiff,             )
                                       )        No. 02 C 8700
vs.                                    )
                                       )
RICHARD CATRAMBONE and GREAT           )        PLAINTIFF REQUESTS
LAKES BUILDING MATERIALS, INC.,        )        TRIAL BY JURY
                                       )        MAGISTRATE JUDGE BOBRICK
                Defendants.            )

## COMPLAINT

NOW COMES the Plaintiff, THOMAS ADAMS, (hereinafter referred to as "Plaintiff")

by and through his attorneys, ALAN H. SHIFRIN & ASSOCIATES, L.L.C., and complaining of

the Defendant, RICHARD CATRAMBONE (hereinafter referred to as "Defendant") and

Defendant, GREAT LAKES BUILDING MATERIALS, INC., (hereinafter referred to as "Great

Lakes") states as follows:

### GENERAL ALLEGATIONS

1.    The Plaintiff, THOMAS ADAMS, is a resident of Stevensville, Berrien County,
      Michigan.

2.    The Defendant, RICHARD CATRAMBONE, is a resident of Naperville, DuPage
      County, Illinois.

3.    The Defendant, GREAT LAKES BUILDING MATERIALS, INC., is a business
      corporation organized under the laws of the State of Illinois, and has its principal place of
      business in Steger, Cook County, Illinois.

4.    At all times relevant herein, Plaintiff, THOMAS ADAMS, and Defendant, RICHARD
      CATRAMBONE, were to be equal shareholders in Great Lakes.



5. That at all times relevant herein, the Plaintiff was to be the Vice President and the Defendant, Richard Catrambone, was to be the President of Great Lakes.

6. That on or about October 1, 2001, the Plaintiff did pay the sum of Fifty Thousand ($50,000.00) Dollars for the stock interest in Great Lakes. That in exchange for the payment of said sum, Plaintiff was to be issued fifty (50%) percent of all outstanding shares of stock in Great Lakes and was to be an officer, Director and employee of said Corporation. The value of the outstanding shares of stock that were not issued and the value of the business of Great Lakes exceeds Seventy-five Thousand ($75,000.00) Dollars exclusive of interest and costs.

7. That on or about February 15, 2002, the Plaintiff did execute a Commercial Guaranty to secure a line of credit for Great Lakes in the amount of Two Hundred Fifty Thousand ($250,000.00) Dollars; Plaintiff did execute this Commercial Guaranty as a shareholder and officer of Great Lakes.

8. That commencing October 1, 2001 through and including September 5, 2002, Plaintiff was a full time employee of Great Lakes. That his compensation was to be $1,550.00 per week plus expenses.

9. That after Plaintiff requested that a shareholders meeting be held to inquire into the finances of Defendant, Great Lakes, that on or about September 5, 2002, the Defendant, Richard Catrambone, did purportedly terminate Plaintiff's employment and paid to Plaintiff over his objection the sum of Fifty Thousand ($50,000.00) Dollars.

10. That on or about September 9, 2002 the purported legal representative of Great Lakes did notify Plaintiff that Plaintiff was not a shareholder in Great Lakes because shares had not been issued and that Plaintiff held no ownership or other interest in the business.

11. Jurisdiction of this court is invoked under the provisions of Title 28 U.S.C. Section 1332. There is complete diversity of citizenship between the Plaintiff and Defendants.

12. The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

Venue is proper in this District in accordance with Title 28 U.S.C. Section 1391.

## COUNT I

## ACCOUNTING AND OTHER RELIEF

13. That the Plaintiff was to be a 50% shareholder with the Defendant, Richard Catrambone, in the business of Great Lakes.

14. That Plaintiff and Defendant, Richard Catrambone, took the necessary steps to cause the incorporation of Great Lakes Building Materials, Inc., including the obtaining of a line of credit, the conduct of business, the establishment of bank accounts, and otherwise held themselves out and did operate and do business as Great Lakes.

15. That in the course of conducting business, the Plaintiff ascertained and determined that the Defendant, Richard Catrambone, failed to disclose and clandestinely hid from Plaintiff, certain profits and avails that were diverted from Great Lakes and Plaintiff to the benefit of Defendant, Richard Catrambone.

16. That Defendant, Richard Catrambone, upon being notified by Plaintiff of his discovery, was effectively terminated from all information, operation and access to the business of the parties which involved the warehousing, sale and distribution of building materials.

17. That the Plaintiff demanded an accounting from the Defendant, which was refused.

WHEREFORE, Plaintiff is entitled to an accounting and other relief by reason of Defendant, Richard Catrambone's wrongful actions, and for its costs and attorneys fees incurred herein. Plaintiff reserves the right to amend this Complaint for additional claims and relief.

## COUNT II

### BACK WAGES

18.    That commencing on or about October 1, 2001, Plaintiff became a full-time employee of

Defendant, Great Lakes, with compensation for his services set at $1,550.00 per week

plus expenses.

19.    That Plaintiff did receive $1,550.00 per week for the first three weeks of August, 2002,

but did not receive the balance of wages outstanding through the time of his purported

termination in the amount of $71,300.00.

20.    That the wages are due and owing to Plaintiff and the failure to pay the same is in

violation of the Wage Payment and Collection Act of the State of Illinois, 820 ILCS

115/1, *et seq.* And 115/2.

21.    That the refusal to pay wages to Plaintiff is willful and violates the aforesaid Act.

Plaintiff is due for the willful refusal by Defendant, Richard Catrambone, to make

payment in accordance with said Act, punitive damages in the amount of $50,000.00, and

should be assessed reasonable attorneys fees and costs.

WHEREFORE, Plaintiff prays that this court enter judgment against the Defendant,

Great Lakes, and Defendant, Richard Catrambone,  in the amount of $71,300.00 for

compensatory damages plus punitive damages in the amount of $50,000.00 plus reasonable

attorneys fees and costs for the necessity of filing this action.

## COUNT III

## REIMBURSEMENT OF BUSINESS EXPENSES

22.     Plaintiff is entitled to reimbursement of Twelve Thousand Seven Hundred Twenty-eight ($12,728.00) Dollars for business expenses incurred from October 1, 2001 through and including September 7, 2002 in the conduct of the business of Great Lakes.

23.     That demand for said payment was made and Defendant, Richard Catrambone, willfully refused to reimburse the Plaintiff for the reasonable and necessary business expenses incurred by the Plaintiff herein.

        WHEREFORE, Plaintiff prays for judgment against Defendant, Great Lakes, and Defendant, Richard Catrambone,  in the amount of $12,728.00 plus costs and interest.

## COUNT IV

## INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

24.     Plaintiff, as a 50% owner of the business of Great Lakes and as an employee thereof, had a reasonable expectation that he would continue to be compensated for his services as an employee of the corporation at the agreed compensation of $1,550.00 per week plus to participate in the profits, benefits and emoluments arising from his 50% ownership of Great Lakes.

25.     That by reason  of Defendant, Richard Catrambone's wrongful actions, Plaintiff has been denied continuing income and salary and the benefits of the ongoing business that Great Lakes enjoys.

26.     That the Defendant, Richard Catrambone, at all times was aware of the prospective economic advantages enjoyed by the Plaintiff, yet intentionally interfered with said prospective economic advantage.

27. As a result of Defendant, Richard Catrambone's wrongful conduct, Plaintiff has lost prospective economic advantage and suffered certain and substantial damages in an amount yet to be determined but not less than $75,000.00.

WHEREFORE, Plaintiff demands judgment against Defendant, Richard Catrambone, in an amount yet to be determined by this court but not less than $75,000.00 plus costs and reasonable attorneys fees for the filing of this action.

## COUNT V

### BREACH OF FIDUCIARY DUTY

28. Plaintiff and Defendant, Richard Catrambone, were to be 50% shareholders and essentially partners in the operation of a building materials business, sale distribution and warehousing business.

29. The Defendant, Great Lakes, was formed June 18, 2001 with its registered office located at 2570 Waterford Lane, Lake-In-The-Hills, Illinois, and subsequently transferred the registered office of the Defendant, Great Lakes, to 10756 South Wentworth, Naperville, Illinois.

30. That the Defendant, Richard Catrambone, owed a fiduciary duty to Plaintiff as a 50% shareholder and co-venturer in the entity and business to act in an honest forthright manner and to deal fairly and honestly with the Plaintiff.

31. Defendant, Richard Catrambone, wrongfully breached this fiduciary duty owed to Plaintiff and no privilege exists to justify the breach of this fiduciary duty owed by Plaintiff.

32. That the Defendant, Richard Catrambone, did the following wrongful acts, *inter alia*:

(a) Overcharged Great Lakes by $4.00 per 1000 square feet of wallboard being sold without disclosure or approval or agreement of the Plaintiff;

(b)     Used various other entities controlled by Defendant, Richard Contrambone, including Summit Truck Leasing, Inc. and Summit Express, Inc., as vehicles to divert monies and profits rightfully belonging to Great Lakes and to Plaintiff.

(c)     Failed to pay a reasonable rental to Great Lakes for the use, storage or operation of the related businesses owned or controlled by Defendant, Richard Contrabone, to-wit: Summit Truck Leasing, Inc. and Summit Express, Inc.;

(d)     Used the Continental Community Bank and Trust Company in Aurora, Illinois, to facilitate the taking of Plaintiff's interest in the business and to attempt to denude Plaintiff of his rightful assets and ownership in Great Lakes.

(e)     That Defendant, Richard Catrambone, did wrongfully and without authority terminate Plaintiff as a shareholder, officer and employee in Great Lakes; and

(f)     Otherwise acted wrongfully in violation of the fiduciary duties owed by Defendant, Richard Catrambone, to Plaintiff.

WHEREFORE, Plaintiff prays for judgment against the Defendant, Richard Catrambone, in an amount equal to any and all damages suffered by Plaintiff as a reasonable result of Defendant, Richard Catrambone's wrongful conduct in an amount yet to be determined by this court, and for the assessment of punitive damages, costs and reasonable attorneys fees for the intentional wrongful acts committed by this Defendant, and for any additional relief that this court deems just and reasonable, and for trial by jury as to all counts in this complaint.

One of the Attorneys for Plaintiff,
THOMAS ADAMS

ALAN H. SHIFRIN, ESQ.
ALAN H. SHIFRIN & ASSOC., L.L.C.
3315 Algonquin Road #202
Rolling Meadows, IL 60008
(847) 251-1841
FAX: (847) 251-1842

## <u>VERIFICATION</u>

I, THOMAS ADAMS, being first duly sworn on oath, depose and state that I am the Plaintiff in the subject case, that I have read the above and foregoing Complaint, and that the matters set forth therein are true and correct to the best of my knowledge.

SUBSCRIBED & SWORN TO before me
This ___8th___ day of ___November___, 2002.

_____
Notary Public

MARY CARVALAS
MY COMMISSION # DD 141426
EXPIRES: August 12, 2006
Bonded Thru Notary Public Underwriters



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS


DOCKETED
DEC 0 3 2002

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

| | |
|---|---|
| **Plaintiff(s): THOMAS ADAMS** | **Defendant(s):RICHARD CATRAMBONE, GREAT LAKES BUILDING MATERIALS,INC.** |
| County of Residence: | County of Residence: |
| Plaintiff's Atty:   ALAN SHIFRIN<br>ALAN SHIFRIN<br>&ASSOCIATES,LLC<br>3315 ALGONQUIN<br>ROAD,SUITE 202,ROLLING<br>MEADOWS,ILLINOIS 60008<br>847-222-0500 | Defendant's Atty: |

**JUDGE PLUNKETT**

**02 C 8700**

FILED-ED4
02 DEC -2 PM 2: 20
CLERK
U.S. DISTRICT COURT

II. Basis of Jurisdiction:    **4. Diversity (complete item III)**

**MAGISTRATE JUDGE BOBRICK**

III. Citizenship of Principal
Parties (Diversity Cases Only)

Plaintiff:-2 Citizen of Another State
Defendant:-1 Citizen of This State

IV. Origin :            **1. Original Proceeding**

V. Nature of Suit:      **160 Stockholder Suits**

VI.Cause of Action:     **ACCOUNTING,BREACH OF FIDUCIARY DUTIES,BACK WAGES,DAMAGES,ATTORNEYS FEES AND OTHER RELIEF**

VII. Requested in Complaint
        Class Action:**No**
        Dollar Demand: **ACCOUNTING,$135,000,ATTORNEYS FEES ,ETC.**
        Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature:

Date: 11/20/02   12/02/02

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

In the Matter of

THOMAS ADAMS,

                     **Plaintiff,**

vs.

RICHARD CATRAMBONE and GREAT LAKES BUILDING
MATERIALS, INC.,          **Defendants.**

**DOCKETED**

DEC 0 3 2002

Case Number:

**JUDGE PLUNKETT**

# 02C 8700

**MAGISTRATE JUDGE BOBRIC**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

THOMAS ADAMS

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME HOWARD E. GILBERT | NAME ALAN H. SHIFRIN |
| FIRM HOWARD E. GILBERT & ASSOC., LTD. | FIRM ALAN H. SHIFRIN & ASSOC., LLC. |
| STREET ADDRESS 1000 Skokie Blvd., LL31 | STREET ADDRESS 3315 Algonquin Road, #202 |
| CITY/STATE/ZIP Wilmette, IL 60091 | CITY/STATE/ZIP Rolling Meadows, IL 60008 |
| TELEPHONE NUMBER (847) 251-1841 / FAX NUMBER (847) 251-1842 | TELEPHONE NUMBER (847) 222-0500 / FAX NUMBER (847) 222-0375 |
| E-MAIL ADDRESS justiceb@aol.com | E-MAIL ADDRESS ashiflaw@aol.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) #21313 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) #38322 |
| MEMBER OF TRIAL BAR? YES ☒ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☒ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER / FAX NUMBER | TELEPHONE NUMBER / FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

FILED-E04
U.S. DISTRICT COURT
DEC -2 PM 2:20

# ADVERSARY COMPLAINT
# EXHIBIT B

# UNITED STATES DISTRICT COURT
### for the

Northern District of Illinois

| | |
|---|---|
| THOMAS ADAMS | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.    02 C 8700 |
| RICHARD CATRAMBONE, ET AL | ) |
| *Defendant* | ) |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

■ the plaintiff *(name)*    THOMAS ADAMS                                    recover from the
defendant *(name)*    RICHARD CATRAMBONE and GREAT LAKES BUILDING MATERIALS    the amount of
Six Hundred Fifty Nine Thousand Five Hundred Thirty Five        659,535.
                                        dollars ($            ), which includes prejudgment
Dollars and Thirty Seven Cents                    37
interest at the rate of        %, plus postjudgment interest at the rate of        %, along with costs.

❑ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)*
                recover costs from the plaintiff *(name)*

■ other:    3/23/07: For Liabilities: The jury unanimously finds favor in plaintiff Thomas Adams and against
defendant Richard Catrambone and Great Lakes Building Materials, Inc.

This action was *(check one)*:

■ tried by a jury with Judge        Magistrate Judge Maria Valdez on Liabilities        presiding, and the jury has
rendered a verdict.

■ tried by Judge        Magistrate Judge Maria Valdez on Damages        without a jury and the above decision
was reached.

❑ decided by Judge                                    on a motion for

Date:    Sep 30, 2010            Michael W. Dobbins, Clerk of Court

                        /s/ Yolanda Pagan, Deputy Clerk
                            Deputy Clerk

# ADVERSARY COMPLAINT
# EXHIBIT C

0IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS ADAMS,                          )
                                       )
          Plaintiff,                   )
                                       )        No. 02 C 8700
     v.                                )
                                       )        Magistrate Judge Maria Valdez
RICHARD CATRAMBONE and GREAT           )
LAKES BUILDING MATERIALS, INC.,        )
                                       )
          Defendants.                  )
                                       )

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Adams brought this action against defendants Richard Catrambone and Great Lakes Building Materials, Inc. ("GLBM"), alleging breach of fiduciary duty, tortious interference with economic advantage, and violation of the Illinois Wage Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Liability and damages were bifurcated by agreement of the parties. The liability phase was tried before a jury, and damages were heard in a bench trial. On March 23, 2007, following a four-day trial, a jury found in favor of Adams and against Catrambone on his fiduciary duty and loss of prospective economic advantage claims and in favor of Adams and against GLBM on his Illinois Wage Act claim. The jury further found with respect to both claims against Catrambone that Catrambone's conduct was willful and wanton and that Adams was entitled to an award of punitive damages. A two-day trial on damages was heard by the Court on March 30-April 1,

2008.  The matter is now before the Court for findings of fact and conclusions of law on damages

in accordance with Federal Rule of Civil Procedure 52(a).

The Court has considered the testimony of the witnesses who testified at both phases of

the trial, the parties' trial exhibits, the stipulations made by the parties, the liability jury's verdict,

the proposed findings and conclusions submitted by the parties, and the closing arguments of

counsel.  To the extent certain findings of fact may be deemed conclusions of law, they should

also be considered conclusions of law.  Similarly, to the extent matters contained in the

conclusions of law may be deemed findings of fact, they should also be considered findings of

fact.

## **FINDINGS OF FACT**

1.  Adams and Catrambone are 50/50 partners in a business or venture to, among other

things, distribute building materials including drywall.  Adams and Catrambone caused

GLBM to be formed for the purpose of distributing building materials, with each taking a

50% interest.

2.  By finding in Adams's favor on his tortious interference claim, the jury necessarily found

that the partnership was not dissolved on September 5, 2002, as Catrambone claims.

### ***Breach of Fiduciary Duty Claim***

3.  Catrambone owed a fiduciary duty to Adams, he breached that duty, and Adams suffered

damages proximately caused by the breach.  Adams's damages were caused by insider

dealing, diversion of money and profit, and wrongful termination.

4.  Catrambone, though RDM Distribution, a company owned and controlled by him,

improperly overcharged GLBM by $4.00 per 1000 square feet of wallboard, a total of

2

$3,200.00 per week for thirty-two weeks, without disclosure to or the approval of Adams.

Adams claims the total amount of damages to him is thus $102,400.00.

5.    Catrambone, through Summit Truck Leasing, Inc. and Summit Express, Inc., entities

owned or controlled by him, diverted monies and profits belonging to GLBM and Adams.

6.    Based on the equitable accounting in this case, Adams claims his damages for wrongful

diversion are $15,042,965.65. Adams, however, limits his claim of damages for wrongful

diversion to $3,000,000.00.

7.    Catrambone wrongfully terminated Adams as a shareholder, officer, and employee in

GLBM in September 2002.

8.    As a result of his wrongful termination, Adams claims lost final compensation payments

from GLBM from the start of the business to September 2002 in the amount of

$84,028.00, representing $71,300.00 in wages and $12,728.00 in unreimbursed expenses.

9.    As a result of his wrongful termination, Adams claims lost income and benefits from

September 2002 through December 2007[1] in the amount of $1,119,121.00.

10.   Adams claims he lost a total of $498,935.00 in base income from September 2002 to

December 2007. This income is calculated using a base weekly wage of $1,550.00, with

a 3% increase for each succeeding year.

11.   Adams claims he lost $525,000.00 in bonuses/dividends from September 2002 through

December 2007, based upon an agreement between Adams and Catrambone. The

---

[1] For the present date, Adams uses December 31, 2007, as December 2007 was the date
the case was first scheduled to go to trial on the damages issue.

3

claimed lost bonuses amount to $50,000.00 in 2002; $75,000.00 in 2003; $100,000.00 in 2004; $100,000.00 in 2005; $100,000.00 in 2006; and $100,000.00 in 2007.

12. Adams claims he lost a total of $51,618.00 in health benefits from September 2002 to December 2007, calculated by multiplying his monthly health insurance premiums of $645.00 in 2002 by the applicable number of weeks. For each succeeding year, Adams increased the monthly premiums by 8% over the previous year's premiums.

13. Adams claims he lost a total of $43,588.00 in lost automobile allowance from September 2002 to December 2007, calculated by multiplying his monthly base allowance of $560.00 by the applicable number of months. For each succeeding year, Adams increased the monthly allowance by 7% over the previous year.

### *Illinois Wage Act Claim*

14. Adams claims GLBM violated the Illinois Wage Act by failing to pay final compensation to Adams in the amount of $84,028.00, comprised of $71,300.00 in wages and $12,728.00 in benefits.

15. GLBM did not rebut Adams's claim for damages.

### *Tortious Interference Claim*

16. Adams had a reasonable expectancy of continuing a valid business relationship with GLBM from September 2002 through December 2012.

17. Catrambone tortiously interfered with Adams's business expectancy from GLBM by diverting money and profits of GLBM. As a partner in GLBM, Adams was damaged in the amount of 50% of monies and profits wrongfully diverted. Adams claims that

4

$15,042,965.65 in money and profits of GLBM were wrongfully diverted but limits his claim of damages for wrongful diversion to $3,000,000.00.

18. Catrambone tortiously interfered with Adams's business expectancy from GLBM by improperly terminating Adams from employment with GLBM and improperly interfering with Adams's right as a shareholder of GLBM.

19. Adams claims he suffered $5,297,310.00 in damages as a result of Catrambone's tortious interference. Adams's damages calculations include $1,047,348.00 in lost future income; $1,025,000.00 in lost future bonuses and dividends; $123,498.00 in lost future health benefits; and $101,464.00 in lost automobile allowance from 2008 through 2012.

### *Punitive Damages*

20. Catrambone willfully and wantonly breached his fiduciary duties to Adams.

21. Catrambone willfully and wantonly interfered with Adams's business expectancy with GLBM.

## CONCLUSIONS OF LAW

22. Pursuant to the general jury verdict on liability, Adams was a 50/50 partner of Catrambone and a 50/50 shareholder with Catrambone in GLBM.

23. As a 50/50 partner, Adams was entitled to a 50% share in the profits of GLBM.

24. As the party claiming damages, Adams "bears the burden of proving those damages to a reasonable degree of certainty." *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 632 (7th Cir. 2007).

25. "[I]n the specific context of lost profits damages, Illinois courts have stated that '[l]ost profits will be allowed only if: their loss is proved with a reasonable degree of certainty;

the court is satisfied that the wrongful act of the defendant caused the lost profits; and the

profits were reasonably within the contemplation of the defaulting party at the time the

contract was entered into.'" *Id.* (citation omitted).

26. Damages for lost profits are inherently prospective and thus "uncertain and incapable of

calculation with mathematical precision." *Id.* at 632-33. Therefore, "'the evidence need

only afford a reasonable basis for the computation of damages which, with a reasonable

degree of certainty, can be traced to defendant's wrongful conduct.'" *Id.* at 633 (citation

omitted).

27. However, "'speculative, inaccurate or false projections of income and evaluation of the

business'" or evidence based on conjecture will not support a damages award. *Id.*

28. Adams's computation of wage and benefits damages are based on figures that were

agreed upon between Adams and Catrambone.

29. An equitable accounting may be ordered where the computation of damages is extremely

complex. *See Drake Enters., Inv. v. Colloid Env't Techs. Co.*, No. 08 C 6753, 2009 WL

1789355, at *3 (N.D. Ill. June 24, 2009).

30. Catrambone provided Adams with a Statement of Account, which consisted of a

document containing thousands of line items and thirty-two boxes of documents.  The

line items did not identify or otherwise refer to the documentation supporting each entry.

31. Adams objected to a total of $15,042,965.65 in entries that indicated wrongful diversion.

Catrambone did not amend the accounting in response to Adams's objections.

32. Catrambone's Statement of Account in this case was deficient in numerous ways,

including failing to itemize figures and failing to introduce evidence of underlying

records in support of his statement of accounting.  In addition, Catrambone's own trial

testimony established his lack of credibility with regard to his accounting methods.  The

Court therefore finds that Catrambone's records may be altered or are otherwise not

credible.  The accounting's deficiencies and Catrambone's lack of credibility lead to an

adverse inference against Catrambone's version of the accounting.

### *Damages for Breach of Fiduciary Duty*

33.  Adams's calculation of $102,400.00 for Catrambone's overcharging for wallboard does

not take into account the fact that Adams was a 50/50 shareholder in GLBM.  The Court

therefore finds that Adams is entitled to only **$51,200.00** in damages for the wallboard

overcharge.

34.  Adams's testimony acknowledged that his calculation of $15,042,965.65 in diverted

profits was only an educated guess at best and that his final demand for $3,000,000.00

was based upon an apparently arbitrary reduction of 40%, with 50% of the reduced

amount owing to him as a partner in GLBM.

35.  However, the Court finds that Catrambone's own failure to provide a complete and

credible statement of accounting was a substantial reason why profits could not be

calculated in more detail.

36.  The Court concludes that Adams has proved to a reasonable degree of certainty that

Catrambone unlawfully diverted at least **$500,000.00** in money and profit from related-

party transactions.

37.     As Catrambone has offered no evidence contrary to Adams's stated loss of final

compensation for unlawful termination in breach of Catrambone's fiduciary duty, Adams

is entitled to an award of the full amount of **$84,028.00.**

38.     Adams has proven to a reasonable degree of certainty that he is entitled to lost wages in

the amount of $1,550.00 per week from September 2002 to December 2007. He has not,

however, established any basis for increasing his wages by 3% per year, and thus any

increase is speculative. Adams is awarded **$427,800.00** for his lost wages.

39.     Adams's testimony established that his claim of lost future bonuses and dividends was

speculative, and thus those damages cannot be awarded. *See Partington v. Broyhill*

*Furniture Indus., Inc.*, 999 F.2d 269, 273 (7th Cir. 1993) (finding, in the context of

proving future bonus damages, that the greater amount at stake, the greater the burden of

production); *cf. Schiffels v. Kemper Fin. Servs., Inc.*, No. 91 C 1735, 1993 WL 153850, at

*6-7 (N.D. Ill. May 11, 1993) (awarding future bonus damages when employee was

entitled to a bonus as part of an executive compensation plan).

40.     Adams has established to a reasonable degree of certainty that he is entitled to damages

for lost health benefits in the amount of $645.00 per month from September 2002 to

December 2007. He admitted at trial, however, that his assumption of an 8% yearly

increase in benefits is speculative. Adams is therefore awarded **$41,280.00** in lost health

benefits for his breach of fiduciary claim.

41.     Adams's claim for his lost automobile allowance is too speculative to be awarded.

42.     Adams is therefore awarded a total of **$1,104,308.00** in damages for his breach of

fiduciary claim against Catrambone.

8

Case 1:11-cv-08700 Document #: 22-9 Filed: 09/30/19 Page 9 of 114 PageID #:502
Case 1:09-cv-08700 Doc # 22-9 Filed: 09/30/19 Page 29 of 31
Document     Page 29 of 31

### *Damages for Tortious Interference Claim*

43.    Adams's claim of damages for wrongfully diverted monies and profits has already been

accounted for in relation to his breach of fiduciary claim, as described above.

44.    Adams has established that he is entitled to lost future income from 2008 through 2012.

He has not shown any basis for awarding the speculative yearly increase in wages.

Adams is awarded a total of **$403,000.00** for lost future income.

45.    As stated above, Adams has not established to a reasonable degree of certainty that he is

entitled to lost future bonuses or dividends.

46.    Adams has established to a reasonable degree of certainty that he is entitled to damages

for lost future health benefits in the amount of $645.00 per month from 2008 to 2012.  He

has not offered any evidence supporting his assertion that the award should include an 8%

yearly increase in benefits.  Adams is therefore awarded **$38,700.00** in lost health benefits

for his breach of fiduciary claim.

47.    As stated above, Adams's claim for his lost future automobile allowance is too

speculative to be awarded.

48.    Adams is therefore entitled to a total of **$441,700.00** in additional damages for the

tortious interference claim against Catrambone.

### *Damages for Equitable Accounting*

49.    Adams's request for $15,042,965.65 in damages on the equitable accounting is improper

under the circumstances.  The purpose of the accounting in this case was to enable Adams

to calculate damages for his breach of fiduciary duty and tortious interference claims to a

reasonable degree of certainty in a complex case.  *See Medtronic, Inc. v. Intermedics,*

*Inc.*, 725 F.2d 440, 443 (7th Cir. 1984). Adams has not offered evidence warranting additional money damages for the accounting beyond those he has already established in relation to his breach of fiduciary duty and tortious interference claims, particularly where the accounting damages he seeks double count those recovered for his other causes of action.

### *Set Off*

50.   Adams's testimony established that his wages and unemployment compensation following his termination from GLBM amounted to $31,484.63 in 2002; $15,204.00 in 2003; $47,344.00 in 2004; $153,234.00 in 2005 and 2006; and $120,000.00 in 2007. Adams has not shown that he does not have a reasonable expectancy of maintaining a level of $120,000.00 in wages through 2012. Adams has also not demonstrated that he would have received these wages even if he had remained employed at GLBM, and thus his total recovery will be set off by a total amount of **$1,120,500.63.**

### *Punitive Damages*

51.   As a result of Catrambone's willful and wanton breach of fiduciary duty and tortious interference with Adams's business expectancy, Adams is entitled to an award of punitive damages against Catrambone. Under Illinois law, "the purpose of an award for punitive damages is to punish the individual responsible for the wrongful conduct, to teach the individual not to repeat the wrongful conduct, and to deter others from similar conduct." *V.I.M. Recyclers, L.P. v. Magner*, No. 2005 WL 1745657, at *19 (N.D. Ill. July 21, 2005) (citing *Page v. City of Chi.*, 701 N.E.2d 218, 227 (Ill. App. Ct. 1998)). The Court finds

10

that an award of **$150,000.00** is sufficient to punish Catrambone and to deter him and others from similar conduct in the future.

### *Illinois Wage Act Damages*

52.    GLBM has offered no evidence contrary to Adams's stated loss of final compensation, and therefore Adams is entitled to an award of **$84,028.00** from GLBM.

## CONCLUSION

For the foregoing reasons, Plaintiff Thomas Adams is entitled to damages from defendant Richard Catrambone for breach of fiduciary duty and tortious interference with prospective economic advantage in the amount of **$575,507.37.** Adams is further entitled to damages from Great Lakes Building Materials, Inc. in the amount of **$84,028.00.**

**SO ORDERED.**                                    **ENTERED:**

                                                   *Maria Valdez*

**DATE:** **September 30, 2010**

                                                   **HON. MARIA VALDEZ**
                                                   **United States Magistrate Judge**